**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Dengbing Chen,

Petitioner,

v.

James Janecha et al.,

Respondents.

No. 5:26-cv-03808-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I. SUMMARY

Petitioner Dengbing Chen ("Petitioner") a native and citizen of the People's Republic of China, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is currently detained in the Adelanto ICE Processing Center, within the Central District of California. Petitioner has a final order of removal from June 5, 2019. Immigration authorities did not effectuate that removal order—that is, to return Petitioner to China—at the time it was entered. Immigration and Customs Enforcement ("ICE") released Petitioner from custody on an Order of Supervision ("OSUP") because it was unable to obtain the travel documents necessary to remove him to China. *Id*. Since his release—from September 11, 2019, until he was taken into custody June 28, 2026—Petitioner has remained at liberty and complied with all check-ins with ICE. The record does not reflect that he had any issues while on

supervision, or that he violated the terms of that supervision, over the past seven years.

In this habeas action, Petitioner claims that his re-detention is unlawful because (1) ICE re-detained him without identifying any violation of the conditions of his OSUP and without identifying any changed circumstance establishing a significant likelihood that he will be removed in the reasonably foreseeable future in violation of 8 C.F.R. §§ 241.4(l)(1) and 241.13(i); (2) he did not receive notice of the basis for revocation and an opportunity to be heard *before* he was re-detained in violation of due process; (3) there is no significant likelihood of his removal in the reasonably foreseeable future; and (4) revocation of Petitioner's OSUP and his re-detention were arbitrary, capricious, an abuse of discretion, and undertaken without observance of procedure required by law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (D). (Dkt. No. 1 ("Petition").) He seeks an order granting his immediate release on OSUP.

Respondents argue Petitioner has not been detained past the presumptive six months, and Respondents followed procedure by serving Petitioner with a Notice of Revocation of Release and an Informal Interview. (Dkt. No. 9 ("Answer").)

Following several recent decisions in this District, the Court finds that Petitioner's detention is not authorized by 8 U.S.C. § 1231(a)(6) because his removal is not "reasonably foreseeable" and is beyond the presumptively reasonable six months prescribed by the Supreme Court, the Respondents have not met their burden to show Petitioner's removal is likely in the reasonably foreseeable future and therefore his detention serves no apparent purpose. Additionally, the Court finds that Petitioner's due process was violated when he received notice and an informal interview on the same day he was detained.

Accordingly, the Court **GRANTS** the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing his re-detention absent constitutionally and statutorily adequate pre-deprivation notice and a hearing at which the Government must justify the need to detain him.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner is a citizen of China, currently detained in the Adelanto ICE Processing Center, who has an administratively final order of removal from June 5, 2019. (Pet. ¶ 17.) Immigration authorities did not effectuate that removal order—that is, to return Petitioner to China—at the time it was entered because it was unable to obtain the travel documents necessary to remove him. (Pet. ¶ 18.) Petitioner was released on an OSUP on September 11, 2019. *Id.* Since his release—from September 11, 2019, until he was taken into custody June 28, 2026— for nearly seven years, Petitioner has remained at liberty and complied with every condition of his OSUP, maintained a stable residence in California, reported for all scheduled ICE check-ins, and never violated any condition of his release. (Pet. ¶¶ 20–21.) The record does not reflect that he had any issues while on supervision, or that he violated the terms of that supervision, over the past seven years. *See* Pet.

On June 28, 2026, Petitioner was taken into ICE custody. (Pet. ¶ 21.) Petitioner alleges he was not provided any reason for his arrest nor a reason for revoking his OSUP. (Pet. ¶ 22.) He alleges that he was not provided with an interview or any opportunity to present evidence or to explain why revocation of his OSUP was not warranted before or after re-detaining him. (Pet. ¶ 24.) Respondents dispute this and argue at the time he was re-detained, ICE provided him with the Notice of Revocation of Release and Alien Informal Interview pursuant to 8 C.F.R. section 241.4(1); 8 C.F.R. section 241.3(i). (Ans. at 3; Dkt. No. 9-2.) Respondents provide a copy of the Notice of Revocation of Release, where the reason checked for revocation of OSUP was that "ICE has

the ability and means to effectuate your removal…[and] ICE is seeking a travel document to effect your expeditious removal to China," also, "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." *Id*. Additionally, they provide documentation that an informal interview was conducted on June 28, 2026. *Id*.

Petitioner filed this Petition on July 1, 2026, shortly after he was detained. (Pet.) Petitioner alleges four causes of action: (1) his detention violates the DHS regulations 8 C.F.R. §§ 241.4, 241.13(i) because ICE re-detained him without identifying any violation of the conditions of his OSUP and without identifying any changed circumstance establishing a significant likelihood that he will be removed in the reasonably foreseeable future, and they failed to comply with mandatory procedural safeguards by failing to inform him of the reasons for revocation and failing to provide him a prompt, meaningful opportunity to present evidence and respond; (2) his detention is in violation of the Fifth Amendment Due Process clause because he did not receive notice of the basis for revocation of his OSUP and an opportunity to be heard *before* he was re-detained; (3) his detention is in violation of substantive Due Process because the People's Republic of China has not issued and is not likely to issue a travel document for him, there is no significant likelihood of his removal in the reasonably foreseeable future; and (4) revocation of his OSUP and his re-detention were arbitrary, capricious, an abuse of discretion, and undertaken without observance of procedure required by law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (D). (Pet.) Petitioner seeks a Court order requiring his release and preventing his re-detention. *Id*. at 14.

Respondents filed their Answer on July 17, 2026, and argue Petitioner has not been detained past the presumptive six months, and that Respondents followed procedure by serving Petitioner with a Notice of Revocation of Release

and an Informal Interview. (Ans.) Respondents do not present a rebuttal argument of how Petitioner's removal is substantially likely in the reasonably foreseeable future.

When he initiated this action, Petitioner also applied for a temporary restraining order. (Dkt. No. 2.) The Court denied his application. (Dkt. No. 10.) Petitioner filed his Reply on August 5, 2026 (Dkt. No. 11). The matter is thus fully briefed. Both parties have consented to proceed before the Magistrate Judge. (Dkt. No. 7.)

## III. DISCUSSION

The Petitioner argues his ongoing re-detention violates 8 U.S.C. § 1231, because he was released on OSUP and the government has not shown that his removal is reasonably foreseeable and his re-detention and revocation of OSUP without notice or a meaningful opportunity to be heard, violates due process. (Pet.) Respondents argue Petitioner has not been detained longer than six-months and cannot show there is no significant likelihood of removal in the reasonably foreseeable future and DHS properly revoked Petitioners OSUP. (Ans.) The Court will address each in turn.

### A. Under *Zadvydas*, Petitioner's Detention Violates 8 U.S.C. § 1231.

The Court begins its analysis by addressing Petitioner's third cause of action, which alleges a violation of 8 U.S.C. § 1231(a)(6) and *Zadvydas*. Petitioner is subject to a final removal order from 2019. (Pet. ¶¶ 44–45.) "Under the INA, a removal order becomes final upon the earlier of either (1) a determination of the BIA affirming such order or (2) the expiration of the period in which a petitioner is permitted to seek review of the order by the BIA." *Singh v. Noem*, No. 1:26-CV-00722-KES-CDB (HC), 2026 WL 710315, at *8 (E.D. Cal. Mar. 13, 2026) (citing *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017)). In Petitioner's case, he did not appeal the order within the time he was permitted to seek review in 2019 and thus his removal order became

administratively final on June 5, 2019. (Pet. ¶ 17.) His detention is therefore governed by 8 U.S.C. § 1231(a).

Under that statute, noncitizens subject to administratively final orders of removal must be detained for 90 days to effectuate their removal. *See* 8 U.S.C. § 1231(a)(2). Once the mandatory detention period passes, however, the government has discretion to either detain certain inadmissible or criminal noncitizens beyond that initial removal period or release them subject to an OSUP. *See id.* § 1231(a)(6); *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578–79 (2022) ("After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'").

The Supreme Court has construed § 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas v. Davis*, 533 U.S. 678, 690–96 (2001). The Court instead interpreted § 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. "After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Supreme Court specifically held that "once removal is no longer reasonably foreseeable,

continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

Thus, the Court finds that Petitioner's detention is not authorized by § 1231(a)(6) because his removal is not "reasonably foreseeable."

1. *Zadvydas does not bar a challenge of detention before six months.*

First, the Court rejects Respondents' contention that Petitioner is not entitled to any relief because he has "only been in post-final removal order detention for about four months"—less than the six-months of presumptively reasonable removal order detention period required by *Zadvydas*. (Ans. at 2.) *Zadvydas* does not bar a noncitizen from challenging detention before the end of the six-month period. Its core holding is that § 1231(a)(6) does not authorize detention *beyond* the initial 90-day removal period when removal is not reasonably foreseeable. *See Zadvydas*, 533 U.S. at 699–700. The six-month benchmark is a "presumptively reasonable period of detention" adopted "for the sake of uniform administration," not a rigid prerequisite. *Id.* at 700–01. The Supreme Court in *Zadvydas* outlined a "guide" for approaching these detention challenges, 533 U.S. at 700–01, not a prohibition on claims challenging detention less than six months. *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018). *See Andreasian v. Noem, et al.*, No. 5:26-CV-00995-CV (DTB), 2026 WL 789954, at *3 (C.D. Cal. Mar. 16, 2026) (citation modified) (noting District courts in the Ninth Circuit generally treat this as a guide, not a bar); *see also Clark v. Martinez*, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring) ("[T]he 6-month presumption . . . is just that—a presumption."). The Court therefore rejects Respondents' argument that Petitioner cannot bring a *Zadvydas* claim merely because his detention has not yet reached six months. *Andreasian*, 2026 WL 789954, at *3. "Courts have granted *Zadvydas* relief

before six months when the petitioner provides clear evidence showing that removal is not reasonably foreseeable." *Id*.

Furthermore, though Petitioner's detention had not reached six months at the time the Answer was filed, it has since reached that threshold. Petitioner was detained from June 5, 2019, through September 11, 2019—three months—and from June 28, 2026, to present—another three months. (Ans. at 2.) Therefore, Petitioner has now been detained beyond the presumptive six months.

If an individual subject to a removal order is not removed during the removal period, he may be detained beyond the removal period or may be released subject to supervision. 8 U.S.C. § 1231(a)(6), (a)(3). A noncitizen may not, however, be detained indefinitely under § 1231(a) for the purpose of effectuating removal; he must be released from detention once it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 690–92 (interpreting 8 U.S.C. § 1231(a)(6)); *see also* 8 C.F.R. § 241.13(g)(1) (requiring release on conditions once the government has concluded that removal is not significantly likely in the reasonably foreseeable future). Section 1231(a)(6) "'does not permit indefinite detention' but instead 'limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022) (quoting *Zadvydas*, 533 U.S. at 689). The purpose of detention is to *effectuate* the noncitizens removal from the country, not just to detain a person while the removal process is arranged.

Petitioner's 90-day removal period elapsed after his June 5, 2019, removal order was final, and he was released on an OSUP where he remained for approximately seven years without incident. (Pet. at 5–6.) Because the Petitioner was not removed during the 90-day removal period and was released

from custody on OSUP, the Government may not re-detain him without a showing that there is a significant likelihood of removal in the reasonably foreseeable future.

2. *There is no likelihood of removal in the reasonably foreseeable future*

As stated in *Zadvydas*, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. And "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.; Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003). If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Zadvydas,* 533 U.S. at 701.

Several district courts have recognized, *Zadvydas*'s burden-shifting framework does not apply to noncitizens who are *re-detained* pursuant to the revocation of an OSUP. *Lu v. Joyce*, No. 2:26-CV-00041-SDN, 2026 WL 352447, at *3 (D. Me. Feb. 9, 2026); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); *Saqib v. Andrews*, No. 1:25-CV-2035 DC CSK P, 2026 WL 350830, at *3 (E.D. Cal. Feb. 9, 2026), *report and recommendation adopted sub nom.*, No. 1:25-CV-02035-DC-CSK (HC), 2026 WL 440566 (E.D. Cal. Feb. 17, 2026); *Espada v. Doe*, No. 5:25-CV-02983-JWH-KES, 2026 WL 181539, at *5 (C.D. Cal. Jan. 20, 2026), *report and recommendation adopted*, No. 5:25-CV-02983-JWH-KES, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026). As those cases and the immigration regulations make clear, "when the government revokes release to effectuate removal, the *government* bears the burden of showing a significant likelihood that the noncitizen may be removed." *Pham v. Marin*, No. 5:26-CV-00785-MRA-SP, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026) (citation modified).

Nevertheless, this Court examines both burdens and finds that Petitioner has met his burden and Respondents have not rebutted it.

i. Petitioner's Burden

Petitioner has satisfied his burden to "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner contends, and Respondents do not dispute, that ICE was not able to obtain the necessary travel documents to remove him to China in 2019 and they have not secured travel documents necessary for removal since. (Pet. ¶¶ 18–19.) Consequently, under *Zadvydas*, in connection with whether prolonged detention is justified, the burden shifts to Respondents to demonstrate that Petitioner's removal is foreseeable and imminent. *Zadvydas*, 533 U.S. at 701.

ii. Respondents' Burden

The burden thus shifts to Respondents to supply evidence sufficient to rebut Petitioner's showing. Respondents have not satisfied that burden.

The reason listed on Petitioner's Notice of Revocation of release is that the "ICE is seeking travel documents to effectuate your expeditious removal to CHINA." (Dkt. No. 9-1.) Also marked on that form is "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." *Id*. Respondents provided no support for this conclusory assertion: the Respondents advanced nothing in the Notice of Revocation or in their briefing to show how Petitioner's circumstances had changed, nor did the Respondents allege he violated his conditions of release. They have not provided any other evidence of specifics of steps taken to effectuate Petitioner's removal, including procuring travel documents or communications with the embassy of The Peoples Republic of China. At no point before or during his detention did Respondents have any reason to believe his removal would be imminent. Put simply, Respondents have produced no facts to support a finding that ICE re-

detained Petitioner based on changed circumstances that would make his removal significantly likely in the reasonably foreseeable future.

Respondents only argument is that Petitioner is not entitled to *Zadvydas* relief because he had not been detained beyond the presumptive six months. (Ans.) As noted above, the presumptive six months is a presumption not a bright line rule. And because Petitioner raised the argument of indefinite detention under *Zadvydas* in his Petition, Respondents needed to Answer that argument with more than a statement inferring that they could continue detaining a petitioner merely because the time had not reached six months.

For all these reasons, the Court concludes that Respondents have not rebutted Petitioner's showing that there is not a significantly likelihood that Petitioner will be removed in the reasonably foreseeable future to China. *Hambarsonpour v. Bondi*, No. C25-1802-RSM, 2025 WL 3251155, at *3 (W.D. Wash. Nov. 21, 2025) (where government's showing is ultimately nothing more than continued assurances that travel documents should be obtained soon, the government does not carry its burden, and habeas relief should be granted); *Phan v. Warden of Otay Mesa Det. Facility*, No. 25-CV-02369-AJB-BLM, 2025 WL 3141205, at *4 (S.D. Cal. Nov. 10, 2025) (granting habeas relief and finding that merely submitting a request for travel documents, paired with assurances that ICE has succeeded in procuring travel documents for some individuals from Vietnam, does not itself make petitioner's removal reasonably likely).

The Court concludes that the Petitioner's removal is not likely to occur in the reasonably foreseeable future and therefore Petitioner is to be releases subject to conditions that existed prior to his detention.

**B. Petitioner is Entitled to Notice and an Opportunity to be Heard Prior to Re-detention.**

Petitioner also claims that his re-detention violates due process because he was re-detained without notice or a pre-deprivation hearing.

With respect to the procedural violations Petitioner has alleged, courts in this Circuit have flagged the due process ramifications of the failure to provide appropriate process to a noncitizen whose order of supervision is revoked. *See Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (granting habeas petition and collecting cases concerning revocation of orders of supervision without notice and an informal interview).

The Fifth Amendment provides that "[n]o person shall…be deprived of…liberty…without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas,* 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33 (N.D. Cal. 2025) (collecting cases).

The Ninth Circuit in *Prieto-Romero v. Clark* reaffirmed what that the Supreme Court recognized that even if "continued detention is permitted by statute . . . due process requires 'adequate procedural protections' to ensure that government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Prieto-Romero,* 534 F.3d at 1065 (citing *Zadvydas*, 533 U.S. at 690–91). There is distinction between "whether detention that is statutorily authorized and whether it has been adequately determined to be necessary as to any particular person." *Id.*

ICE may revoke a noncitizen's release on an OSUP under § 1231. *See* 8 C.F.R. §§ 241.4(l), 241.13(i). ICE may revoke release when a noncitizen

violates a condition of their OSUP, "on account of changed circumstances, [if ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," or certain officials may exercise their discretion to revoke release. *Id.* §§ 241.4(l)(1), 241.4(l)(2), 241.13(i)(1), 241.13(i)(2). Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." *Id.* § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for revocation," *id.* § 241.4(l)(1), and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification," *id.* § 241.13(i)(3).

The Petitioner alleges that he was re-detained without any notice of the reason for his revocation when he was detained and that he was not provided an initial interview in connection with his revocation. (Pet. ¶¶ 22–24.) Respondents provide documentation to refute this argument including the Notice of Revocation of Release and Alien Informal Interview pursuant to 8 C.F.R. section 241.4(1); 8 C.F.R. section 241.3(i). (Dkt. Nos. 9-1, 9-2.) On the Notice to Alien of Revocation of Release, the detainee signature line is completed by Petitioner on June 28, 2026. *Id.* It appears that Notice was provided to Petitioner.

However, the bigger issue is that both the Notice and Informal Interview took place on the same day that Petitioner was re-detained, on June 28, 2026. *Id*. Petitioner did not have a meaningful opportunity to address the reason for revocation of his release and his detention. Respondent's Answer indicates that Petitioner was arrested, serviced with the Notice of Revocation of Release and given an Informal Interview all on the same day, June 28, 2026. (Dkt. Nos. 9-1, 9-2.) Although the notice may be given on the same day as the detention, "[w]hen a petitioner is provided notice on the same day that their informal interview is conducted, they are substantially prejudiced in preparing competent arguments

and/or gathering any supporting documents to regain their freedom. What results from such a situation is a deprivation of any 'meaningful opportunity' for a petitioner to be heard on the incredibly important issue of re-obtaining their freedom." *Saengphet v. Noem*, No. 3:25-CV-2909-JES-BLM, 2025 WL 3240808, at *7 (S.D. Cal. Nov. 20, 2025); *Kiwana v. LaRose*, No. 3:25-cv-3678-JES-SBC, 2026 WL 102661, at *6, 2026 U.S. Dist. LEXIS 8504, at *15 (S.D. Cal. Jan. 14, 2026) ("[W]hen the informal interview is conducted on the same day that the Notice is issued, the Government essentially bars the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful."); *see Hagos v. Noem*, No. 3:26-CV-150-JES-DEB, 2026 WL 202873, at *4 (S.D. Cal. Jan. 27, 2026) (same); *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). That is exactly what happened here. An informal interview under these circumstances does not comport with ICE's regulations or with due process.

Here, Respondents provided Petitioner with notice of its justification for revoking his release, on the same day that it conducted his informal interview.[1] As a result, when a petitioner is provided notice revoking OSUP on the same day that their informal interview is conducted, they are substantially prejudiced in preparing competent arguments and/or gathering any supporting documents to regain their freedom. What results from such a situation is a deprivation of any "meaningful opportunity" for a petitioner to be heard on the incredibly important issue of re-obtaining their freedom. *See Mathews*, 424 U.S. at 335;

[1] The Court recognizes that the regulation also requires the Service to "conduct an initial informal interview *promptly* after [the noncitizen's] return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3) (emphasis added). However, an informal interview does not satisfy due process if the noncitizen is not afforded a meaningful opportunity to prepare evidence or information to contest his continued detention.

*Saengphet,* 2025 WL 3240808, at *7; *see also Gulinian v. Noem*, No. 5:26-CV-00833-MCS-PVC, 2026 WL 849285, at *4 (C.D. Cal. Mar. 3, 2026).

The Court notes that, in similar cases in which noncitizens were detained without the notice or interview required by the regulations, courts have ordered noncitizens' release to restore the status quo prior to their unlawful detentions. *V.K. v. Noem*, No. 5:26-cv-00241-MWC-SK, 2026 WL 246023, at *4 (C.D. Cal. Jan. 25, 2026); *Kiwana* 2026 WL 102661, at *6; *Nazarian v. Noem*, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025). Similarly, here, because Petitioner was not provided a meaningful opportunity to challenge his re-detention, his due process was violated and release is the proper remedy.

Regardless, the Court has already found that Petitioner is entitled to release because his detention is not authorized by statute under *Zadvydas*. The question now is what process is due before the Government may re-detain him again in the future. Given that the Government has already re-detained Petitioner once without proper process, it is appropriate to prevent the Government from re-detaining him again absent notice and interview with meaningful time between the two. Multiple courts in this District have found that due process requires pre-deprivation notice and a hearing where, as here, the Government seeks to re-detain someone who has been living at liberty without incident for years. *See, e.g., M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO preventing the petitioner's re-detention absent pre-deprivation notice and a hearing); *Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK, Dkt. 12 (C.D. Cal. Nov. 6, 2025) (same); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted,

2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition and ordering same relief).

As in these cases, the *Mathews v. Eldridge* framework supports Petitioner's claim that that Government may only re-detain him after affording him meaningful pre-deprivation process—including notice and a hearing at which he can contest whether his re-detention is necessary—separate and apart from any procedures required by the regulations. Petitioner has a strong liberty interest in remaining free from confinement. Given Petitioner's lack of criminal record and his seven years of supervised release, the Petitioner has a liberty interest in not being detained. There is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore orders that the Government cannot re-detain Petitioner absent notice and a pre-deprivation hearing at which the Government must justify the need to detain him.

### C. Petitioners Remaining Claims

Because the Court concludes that Petitioner is entitled to release on statutory and due process grounds, it declines to address his alternative arguments, including his argument that Respondents violated the Administrative Procedure Act by revoking his OSUP.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner, Dengbing Chen's (A #: 201-715-753) immediate release along with his personal belongings, including all of her identification, work permits, and other documentation, subject to appropriate conditions of supervision that existed prior to his detention, and preventing his re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine

him; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least three (3) days of notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED: October 2, 2026

HONORABLE ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE